UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

STACIE BRIGGS, on behalf of D.H.,

                    Plaintiff,

v.                                                      7:15-CV-0071 (GTS)

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                    Defendant.
_____

APPEARANCES:                        OF COUNSEL:

LEGAL AID SOCIETY OF NORTHEASTERN     VICTORIA M. ESPOSITO, ESQ.
NEW YORK, INC.,
  Counsel for Plaintiff
17 Hodskin Street
P.O. Box 648
Canton, NY 13617

U.S. SOCIAL SECURITY ADMIN.            EMILY FISHMAN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II   Special Assistant U.S. Attorney
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this Social Security action filed by Stacie Briggs

("Plaintiff") on behalf of her son, D.H., against the Acting Commissioner of Social Security

("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the

parties' cross-motions for judgment on the pleadings.  (Dkt. Nos. 13, 14.)  For the reasons set

forth below, Defendant's cross-motion is granted and Plaintiff's motion is denied.

# I.    RELEVANT BACKGROUND

## A.    Factual Background

D.H. was born on March 23, 2007.  At the time of the hearing, D.H. was in kindergarten.

D.H.'s alleged impairments are attention deficit hyperactivity disorder ("ADHD"), borderline

intellectual functioning, and Oppositional Defiant Disorder.

## B.    Procedural History

On March 1, 2012, Plaintiff applied for Supplemental Security Income on D.H.'s behalf.

Plaintiff's application was initially denied, after which she timely requested a hearing before an

Administrative Law Judge ("the ALJ").  On March 7, 2013, Plaintiff and D.H. appeared before

the ALJ, John P. Ramos.  (T. 38-69.)  The ALJ issued a written decision finding D.H. not

disabled under the Social Security Act on May 9, 2013.  (T. 20-34.)  On November 28, 2014, the

Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final

decision of the Commissioner.  (T. 1-6.)  Thereafter, Plaintiff timely sought judicial review in

this Court.

## C.    The ALJ's Decision

Generally, in her decision, the ALJ made the following six findings of fact and

conclusions of law.  (T. 20-33.)  First, the ALJ found that D.H. was a "preschooler" pursuant to

20 C.F.R. § 416.926a(g)(2) on February 15, 2012 (the date the application for benefits was

filed), and a "school-age child" on May 9, 2013 (the date of the ALJ's decision), having been

born on March 23, 2007.  (T. 23.)  Second, the ALJ found that D.H. had not engaged in

substantial gainful activity since the date the application for benefits was filed.  (*Id*.)  Third, the

ALJ found that D.H. suffers from ADHD and borderline intellectual functioning, which are

severe impairments pursuant to 20 C.F.R. § 416.924(c).  (T. 24.)  Fourth, the ALJ found that

D.H. does not have an impairment or combination of impairments that meets or medically equals

one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I (the "Listings").  (*Id.*)

Fifth, the ALJ found that D.H. does not have an impairment or combination of impairments that

functionally equals an impairment set forth in the Listings.  (T. 24-34.)  Sixth, and finally, the

ALJ concluded that D.H. has not been disabled, as defined by the Social Security Act, since

February 15, 2012, the date his application was filed.  (T. 34.)

## II.     THE PARTIES' BRIEFINGS ON THEIR CROSS-MOTIONS

### A.     Plaintiff's Arguments

Plaintiff makes four arguments in support of her motion for judgment on the pleadings.

First, Plaintiff argues that the ALJ erred in failing to properly consider the effect of medication

and a structured setting on D.H.'s limitations.  (Dkt. No. 13 at 15-16 [Pl.'s Mem. of Law].)

Second, Plaintiff argues that the ALJ improperly weighed the opinions of various sources, and

substituted his own opinions.  (*Id.* at 16-21.)  Third, Plaintiff argues that the ALJ failed to make a

credibility determination of the testimony of Plaintiff, D.H.'s mother.  (*Id.* at 21.)  Fourth,

Plaintiff argues that the ALJ's decision is not supported by substantial evidence.  (*Id.* at 21-25.)

### B.     Defendant's Arguments

In response to Plaintiff's motion and in support of her own cross-motion, Defendant

makes four arguments.  First, Defendant argues that the ALJ properly considered the effects of

medication and a structured setting.  (Dkt. No. 14 at 9-11 [Def.'s Mem. of Law].)  Second,

Defendant argues that the ALJ properly weighed competing opinions, and did not substitute his

own opinion.  (*Id.* at 11-18.)  Third, Defendant argues that the ALJ made a credibility

determination of Plaintiff's testimony.  (*Id.* at 22-23.)  Fourth, and finally, Defendant argues that the ALJ's decision is supported by substantial evidence, and must be affirmed even if substantial evidence would also support another interpretation.  (*Id.* at 4-21.)

## III.    RELEVANT LEGAL STANDARD

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or if there determination was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

An individual under the age of eighteen (18) is disabled, and thus eligible for Social Security Income benefits, if he or she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i). However, that definitional provision excludes from coverage any "individual under the age of [eighteen] who engages in substantial gainful activity . . ." 42 U.S.C. § 1382c(a)(3)(C)(ii).

By regulation, the agency has prescribed a three-step evaluative process to be employed in determining whether a child can meet the statutory definition of disability. 20 C.F.R. § 416.924; *Kittles v. Barnhart*, 245 F. Supp. 2d 479, 487-88 (E.D.N.Y. 2003); *Ramos v. Barnhart*, 02-CV-3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003).

The first step of the test, which bears some similarity to the familiar five-step analysis employed in adult disability cases, requires a determination of whether the child has engaged in substantial gainful activity. 20 C.F.R. § 416.924(b); *Kittles*, 245 F. Supp. 2d at 488. If so, then both statutorily and by regulation the child is ineligible for Social Security Income benefits. 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the claimant has not engaged in substantial gainful activity, the second step of the test next requires examination of whether the child suffers from one or more medically determinable impairments that, either singly or in combination, are properly regarded as severe, in that they cause more than a minimal functional limitation. 20 C.F.R. § 416.924(c); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7. In essence, "a child is [disabled under the Social Security Act] if his impairment is as severe as one that would prevent an adult from working." *Zebley v. Sullivan*, 493 U.S. 521, 529 (1990).

If the existence of a severe impairment is discerned, the agency must then determine, at the third step, whether it meets or equals a presumptively disabling condition identified in the listing of impairments set forth under 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Listings"). 20 C.F.R. § 416.924(c). Equivalence to a listing can be either medical or functional. 20 C.F.R. § 416.924(d); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7. If an impairment is found to meet, or qualify as medically or functionally equivalent to, a listed disability and the twelve-month durational requirement is satisfied, the claimant will be deemed disabled. 20 C.F.R. § 416.924(d)(1); *Ramos*, 2003 WL 21032012, at *8.

Analysis of functionality is informed by consideration of how a claimant functions in six main areas referred to as "domains." 20 C.F.R. § 416.926a(b)(1); *Ramos*, 2003 WL 21032012, at *8. The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Those domains include the following: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for oneself; and (vi) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

Functional equivalence is established in the event of a finding of an "extreme" limitation, meaning "more than marked," in a single domain.  20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8.  An "extreme limitation" is an impairment that "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3)(i).

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains.  20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8.  A "marked limitation" exists when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2)(i). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

## IV.    ANALYSIS

### A.    Whether the ALJ Failed to Properly Consider the Effects of Medication and a Structured Setting on D.H.'s limitations

After carefully considering the matter, the Court answers this question in the negative, for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 14 at 9-11 [Def.'s Mem. of Law].)   To those reasons, the Court adds the following analysis.

Section 416.924a(9)(b)(i) of Title 20 of the Code of Federal Regulations requires consideration of the effects of medication on a child's limitations.  Plaintiff argues that, although the ALJ mentioned D.H.'s remedial help in English Language Arts ("ELA"), "he did not fully analyze the import of this."  (Dkt. No. 13 at 16 [Pl.'s Mem. of Law].)  She argues further that

without such a "structured setting," D.H. would be more severely impaired.  (*Id.*)  Finally, Plaintiff argues that D.H. would be even more impaired without his medication, because "the ALJ conceded in his decision that the child needed his medication to function."  (*Id.*)  For these reasons, Plaintiff contends that the ALJ failed to "meaningfully consider" the structured setting and medication when making his determination.  (*Id.*)

It is true that the ALJ must consider how the child would function without extra help and outside of the structured setting.  20 C.F.R. § 416.924a(b)(5)(iv); *see also Smith v. Massanari*, 00-CV-0402C, 2002 WL 34242375, at *6 (W.D.N.Y. Mar. 17, 2002); *Smith ex rel. J.H. v. Colvin*, 935 F. Supp.2d 496, 505 (N.D.N.Y. 2013).  However, courts have also acknowledged that the ALJ need not explicitly discuss this factor.  *See Watson ex rel. K.L.W. v. Astrue*, 07-CV-6417T, 2008 WL 3200240, at *5 (W.D.N.Y. Aug. 5, 2008) ("While the ALJ must consider how a child would function outside of a supportive setting, the regulation does not command the ALJ to explicitly discuss his consideration of these factors in the decision."); *accord*, *Walker ex rel. J.B. v. Astrue*, 2010 WL 2287566, at *10 (N.D.N.Y. June 3, 2010); *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013).  As long as it is clear from the ALJ's decision that he considered all of the medical, non-medical, and educational evidence presented, the ALJ need not explicitly address the issue of how the child might function outside of structured settings.  *See Watson*, 2008 WL 3200240, at *5; *see also Johnson ex re. A.J. v. Astrue*, 11-CV-5247, 2013 WL 1187436, at *15 (S.D.N.Y. Mar. 22, 2013) (upholding ALJ's decision where he "was indisputably aware that [the child] was in a structured setting" and implicitly compared the child's functioning inside and outside of the structured setting, even though he did not "explicitly discuss structured settings in his opinion").

Here, the ALJ was indisputably aware of both the remedial ELA assistance and the child's medication. For example, he noted that "medical evidence clearly established that the child's behavior patterns improved significantly with consistent adherence to the prescribed medication schedule, and that without the medication, the child's behavior deteriorated." (T. 25.) He also noted that "[t]he child's ADHD appears well-maintained with medication, when his parents adhere to his prescription medication regime" and that "medical records do not indicate any insufficiency in the child's dosing or scripts because his pediatrician has not changed medication or dosage for the child." (T. 27.) Concerning D.H.'s remedial ELA assistance, the ALJ wrote, "[t]he child's second quarter report from his Kindergarten remediation teacher, Pamela M. Stevens reflected academic improvement in the English Language Arts." (T. 26.) He also noted that D.H. does not require special education placement. (T. 29.) It is therefore clear from the record that the ALJ considered all of the medical, non-medical, and educational evidence that Plaintiff presented; and the Court finds that he implicitly, if not explicitly, considered the effect of the child's medication and a structured setting.

### B. Whether the ALJ Improperly Weighed the Opinions of Various Sources and Substituted His Own Opinions

After carefully considering the matter, the Court answers this question in the negative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14 at 4-21 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

### 1. Dr. Noia's Opinion

First, Plaintiff argues that, although the ALJ purported to give "greater weight" to Dr. Noia's opinion, this opinion is not reflected in the ALJ's analysis. (Dkt. No. 13 at 17 [Pl.'s Mem. of Law].) Specifically, Plaintiff alleges that Dr. Noia found a level of impairment which

was "consistent with [Plaintiff's] allegations," and seems to imply that the ALJ did not in fact give Dr. Noia's opinion the weight he stated. (*Id.*) In support of her argument, however, Plaintiff does not indicate which of Dr. Noia's opinions the ALJ ignored.

While it is true that Dr. Noia's opinion contains the line "Results of the examination are consistent with allegations," the report does not articulate the allegations in question. (T. 240.) Plaintiff suggests, but does not show, that the "allegations" are that D.H. is disabled. Just as likely, however, is that Dr. Noia referred to D.H.'s prior medical diagnoses as "allegations." The ALJ does not contest D.H.'s diagnoses of ADHD and borderline intellectual functioning. Therefore, if the "allegations" to which Dr. Noia refers are D.H.'s ADHD and borderline intellectual functioning, the phrase "consistent with allegations" would not support Plaintiff's argument. Without a record of what allegations were made to Dr. Noia before the examination, Dr. Noia's statement that the results are consistent with those allegations carries no meaning, and does not indicate that D.H. is disabled.

Dr. Noia opined as follows: (1) D.H.'s manner of relating, social skills, and overal presentation was moderately adequate, (2) D.H.'s hygiene and grooming was good, (3) D.H.'s expressive and receptive language was moderately adequate, (3) D.H. appeared relaxed and comfortable, (4) D.H.'s attention and concentration were intact, (5) D.H.'s memory skills were mildly impaired, and (6) D.H.'s intellectual functioning is in the borderline range. (T. 39-40.) In addition, Dr. Noia opined that, although D.H. "reportedly has difficulty at times attending, [he] can follow and understand age appropriate instructions." (T. 40.) He further opined that D.H. is able to (1) complete some age appropriate tasks, (2) adequately maintain moderately appropriate social behavior, (3) respond appropriately to changes in the environment, (4) learn at his level of

cognitive functioning, (5) ask questions and request assistance at "somewhat below" an age appropriate manner, (6) be aware of dangers and take precautions at "somewhat below" an age appropriate manner, and (7) interact moderately well with peers and adults. (T. 240.)

The ALJ found that D.H. had marked limitations in one domain, no limitations in another domain, and some "less than marked" limitations in the remaining domains. (T. 29-34.) Dr. Noia's discovery of mild to moderate limitations is not inconsistent with the ALJ's decision. Plaintiff's argument regarding the weight assigned to Dr. Noia's opinion is therefore without merit. Although Plaintiff claims that Dr. Noia's second document, which contains standardized test results, contradicts the ultimate opinion in Dr. Noia's first document, the Court notes that Dr. Noia repeated the same opinions at the conclusion of that second document. (T. 245.) Insofar as Plaintiff also argues that the ALJ misapplied Dr. Noia's standardized test results, that argument implicates a substantial evidence question and is addressed below in Part IV.D. of this Decision and Order.

### 2.     T. Bruni's Opinion

Second, Plaintiff argues that it was error for the ALJ to give greater weight to non-examining review consultant T. Bruni because the consultant's title and qualifications are not set forth on the RFC form. (Dkt. No. 13 at 18 [Pl.'s Mem. of Law].) The record indicates, however, that T. Bruni is a psychologist. At the end of the Childhood Disability Evaluation Form, T. Bruni indicates his or her specialty to be psychology. (T. 248.) Moreover, under the Commissioner's regulations and practices, a Childhood Disability Evaluation Form must be signed by either a "medical consultant" or a "psychological consultant." SSA POMS DI 25230.005(D)(1). Where, as here, that person is a "psychological consultant," then the

consultant is also a "qualified psychologist," which requires either a license or certification in this state or a registration with a national register of health service providers in psychology. SSA POMS DI 24501.001(B)(3). Therefore, the record adequately establishes T. Bruni's credentials as a psychologist and medical source.

Plaintiff further contends that T. Bruni's opinion is not supported by or consistent with the other evidence of record, and should not have been afforded greater weight for that reason. (*Id.* at 18-19.) However, the ALJ assigned greater weight to T. Bruni's conclusions because they were consistent with Dr. Schuessler's treatment notes and Ms. Olmstead's questionnaire responses. (T. 27.) These consistencies constitute "more than a mere scintilla" of evidence necessary to find that the ALJ's assignment of weight was based on substantial evidence.

### 3. Principal Zawatski's Opinion

Third, Plaintiff argues that the ALJ erred by not placing great weight on the opinion of Ms. Zawatski, who was the principal at the school where D.H. attended kindergarten for only two months. (Dkt. No. 13 at 19 [Pl.'s Mem. of Law].) Specifically, Plaintiff contends that it is not clear from the record why the ALJ believed Ms. Zawatski had "limited exposure" to D.H., a belief which was the basis of the weight the ALJ assigned to her opinion. (*Id.*) This argument is without merit. The record is clear that Ms. Zawatski was the Principal of West Side Elementary, and not D.H.'s teacher. (T. 185.) Plaintiff also testified that D.H. attended Ms. Zawatski's elementary school for only two months, before leaving in October. (T. 61.) Contrary to Plaintiff's assertion, it is clear that Ms. Zawatski had limited exposure to D.H. It was not error for the ALJ to afford her opinion lesser weight than that of Ms. Olmstead, who taught D.H. on a daily basis for four months before rendering her opinion in March.

### 4.     Improper Substitution of Opinions

Fourth, and finally, Plaintiff argues that the ALJ improperly substituted his own opinions for those of Ms. Olmstead, Ms. Zawatski, and Dr. Noia.  (Dkt. No. 13 at 21 [Pl.'s Mem. of Law].)  As discussed above in Parts IV.B.1. and IV.B.3. of this Decision and Order, the ALJ was entitled to give little weight to Ms. Zawatski's opinions, and Dr. Noia's opinion was not inconsistent with the ALJ's findings.  Plaintiff's only remaining argument is that the ALJ substituted his own opinion for that of Ms. Olmstead, D.H.'s kindergarten teacher.

This Court recognizes that teachers are "valuable sources of evidence for assessing impairment severity and functioning," *Archer ex rel. J.J.P. v. Astrue*, 910 F. Supp. 2d 411, 423 (N.D.N.Y. 2012), and that a teacher's report should be "afforded significant weight" when the reporting teacher has had an extended opportunity to observe a claimant's functioning.  *Titus ex rel. N.M.C. v. Colvin*, 12-CV-1056, 2014 WL 897038, at *9 (N.D.N.Y.  Mar. 6, 2014); *Stanley v. Comm'r*, 32 F. Supp. 3d 382, 393 (N.D.N.Y. 2014).  However, in and of itself, a teacher's report is not dispositive of the inquiry regarding a claimant's functioning.

Plaintiff's argument as to Ms. Olmstead primarily implicates the question of whether the ALJ's decision was supported by substantial evidence, and, to that extent, the argument is addressed below in Part III.D of this Decision and Order.  The Court does not find, however, that the ALJ committed an error in analyzing Ms. Olmstead's opinion.  The cases to which Plaintiff refers address the rule that an ALJ may not substitute his opinion for that of competent *medical* evidence.  *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008); *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998).  Plaintiff cites no case law, and this Court can find none, extending this rule to the opinion non-medical sources.  When evaluating the opinions of teachers, an ALJ must

merely consider factors such as how well the source explains the opinion, how consistent the opinion is with other evidence, and the degree to which the source presents relevant evidence to support an opinion. SSR 06-03p. These things the ALJ has done. Therefore, Plaintiff's argument that the ALJ improperly substituted his opinion for that of D.H.'s teacher is without merit.

### C. Whether the ALJ Failed to Make a Credibility Determination Regarding the Testimony of Plaintiff, D.H.'s Mother

After carefully considering the matter, the Court answers this question in the negative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14 at 22-23 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

As a fact finder, the ALJ is free to accept or reject the testimony of a claimant's parent. *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 260 (2d Cir. 1988). However, an ALJ's finding that a witness lacks credibility must be "set forth with sufficient specificity to permit intelligible plenary review of the record." *Williams*, 859 F.2d at 261. "If the child claimant is unable adequately to describe his symptoms, the ALJ must accept the description provided by testimony of the person most familiar with the child's condition, such as a parent." *Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 151-52 (N.D.N.Y. 2012) (citing *Jefferson v. Barnhart*, 64 F. App'x 136, 140 [10th Cir. 2003]). "In such a case, the ALJ must make specific findings concerning the credibility of the parent's testimony, just as he would if the child was testifying." *Id*. at 152.

Furthermore, "[t]he ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or

other symptoms alleged." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 271 (N.D.N.Y. 2009).

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Rockwood*, 614 F. Supp. 2d at 271. "The issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of his symptoms are consistent with the objective medical and other evidence." *Hamedallah*, 876 F. Supp. 2d at 152.

"After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject plaintiff's subjective testimony." *Id*. (citing *Saxon v. Astrue*, 781 F. Supp. 2d 92, 105 [N.D.N.Y. 2011]). "An ALJ rejecting subjective testimony concerning pain and other symptoms 'must do so explicitly and with specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence.'" *Melchior v. Apfel*, 15 F. Supp. 2d 215, 219 (N.D.N.Y. 1998) (quoting *Brandon v. Bowen*, 666 F. Supp. 604, 608 [S.D.N.Y. 1987]). "The Commissioner may discount a plaintiff's testimony to the extent that it is inconsistent with medical evidence, the lack of medical treatment, and activities during

the relevant period." *Hamedallah*, 876 F. Supp.2d at 152 (citing *Howe-Andrews v. Astrue*, 05-CV-4539, 2007 WL 1839891, at *10 [E.D.N.Y. June 27, 2007]); *see also F.S. v. Astrue*, 10-CV-0444, 2012 WL 514944, at *20 (N.D.N.Y. Feb. 15, 2012).

In this case, the ALJ determined the following:

> After considering the evidence of record, the undersigned finds that the child's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained below.

(Tr. 27.) The ALJ then noted that the child's report card, Dr. Noia's examination, T. Bruni's analysis, and Dr. Schuessler's treatment notes contradicted the allegations of severity. (T. 27.) Having reviewed the administrative transcript in its entirety, the Court finds that the ALJ correctly applied the standard, enumerated in 20 C.F.R. § 404.1529(c)(3)(i)-(vii), in assessing Plaintiff's credibility. It is clear that the ALJ considered the testimony of both mother and child before deciding that the statements were not entirely credible, because he summarized the testimony before making the credibility determination. (T. 26-27.) Throughout the decision, the ALJ noted inconsistencies and evidence which contradict the alleged severity of D.H.'s limitations. (T. 24-33.)

While the ALJ may not have expressly stated the weight he did or did not give Plaintiff's testimony on various points, "the ALJ did discuss the testimony in such a way as to make it clear to a reviewer of the decision that he discredited [Plaintiff's] opinion." *Phelps v. Colvin*, 20 F. Supp. 3d 392, 404 (W.D.N.Y. 2014); *see also Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("[When] the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that [s]he have mentioned every item of testimony presented to [her] or have

explained why [s]he considered particular evidence unpersuasive or insufficient to lead [her] to a

conclusion of disability.").  Accordingly, the Court finds that the ALJ complied with the

regulations and articulated the inconsistencies upon which he relied in discrediting the testimony

of disabling impairments.  Because substantial evidence in the record supports this finding, the

Court will not substitute its judgment for the ALJ, who was in a better position to assess

credibility.

**D.      Whether the ALJ's Determination Is Supported by Substantial Evidence**

After carefully considering the matter, the Court answers this question in the affirmative,

for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 14 at 9-23 [Def.'s Mem. of

Law].)   To those reasons, the Court adds the following analysis.

**1.      Acquiring and Using Information**

In assessing a child's functioning in the domain of acquiring and using information, the

ALJ considers how well the child learns information, and how well he uses the information he

has learned.  The regulations provide that a preschooler should begin to learn and use "readiness

skills," such as listening to stories, rhyming words, matching letters, counting, sorting shapes,

building with blocks, painting coloring, copying shapes, and using scissors.  20 C.F.R.

416.926a(g)(2)(iii).  Some examples of limited functioning in this domain are where the child

does the following:

> (i) [does] not demonstrate understanding of words about space,
> size, or time; e.g., in/under, big/little, morning/night[;]
> (ii) []cannot rhyme words or the sounds in words[;]
> (iii) [has] difficulty recalling important things [] learned in school
> yesterday[;]
> (iv) [has] difficulty solving mathematics questions or computing
> arithmetic answers [;]
> (v) talk[s] only in short, simple sentences and ha[s] difficulty
> explaining what [he or she] mean[s].

20 C.F.R. § 416.926a(g)(3).

As Plaintiff notes, Ms. Olmstead opined "that the child was below grade level in all major areas of study . . . needed to hear directions 'three or four times,' had a 'very difficult time working independently,' experienced problems with both his ideas and his handwriting, and was unable to keep on topic in class discussions." (Dkt. No. 13 at 19-20 [Pl.'s Mem. of Law] [citing T. 208-09].) However, the question is not whether substantial evidence opposes the ALJ's decision. The Court reiterates that, if supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado*, 805 F. Supp. at 153.

In any case, Ms. Olmstead's opinion is not as clear as Plaintiff contends. First, D.H.'s inability keeping on topic should have been part of the domain of "attending and completing tasks," where the ALJ found marked limitations. SSR 09-4p. Second, despite Ms. Olmstead's statements, she indicated only slight impairment in a majority of the areas under this domain. (T. 209.) Those ratings are consistent with the ALJ's finding that D.H. had some limitations, although less than "marked" limitations, in this domain. (T. 29.) Third, Ms. Olmstead's observations are contradicted by the grades she gave to D.H. on his report card. The child's most recent grades indicate that Ms. Olmstead gave him a "Satisfactory" in sounding out words, identifying initial sounds in words, handwriting, rhyming, understanding stories, and notably, working independently. (T. 189.) She gave D.H. "Good" marks in associating sounds with letters, and recognizing words already taught in class. (*Id.*) She gave him "Good" or "Excellent" marks in most areas of math, with the exception of identifying and describing shapes, in which he received a 5/8 or "Needs Improvement." (*Id.*) These grades contradict the severity which Plaintiff alleges.

18

Plaintiff also emphasizes the effect of medication, a structured setting, and Ms. Zawatski's opinion. (Dkt. No. 13 at 22-23 [Pl.'s Mem. of Law].) These arguments are addressed above in Parts IV.A. and IV.B.3. of this Decision and Order.

Finally, Plaintiff asserts that, because Dr. Noia found performance below an age appropriate level, the ALJ's decision is not supported by substantial evidence. (*Id.*) Dr. Noia, however, found only mild to moderate limitations overall, stating that "[D.H.] can follow and understand age appropriate directions . . . appears to be able to complete some age appropriate tasks . . . [and is] capable of learning at his level of cognitive functioning." (T. 245.) In addition, Dr. Noia noted that D.H. could do counting and could recall and understand instructions. (T. 240.)

D.H.'s grades and observations made by Ms. Olmstead and Dr. Noia constitute substantial evidence that D.H. had attained necessary "readiness skills" as required in this domain—specifically, listening to stories, rhyming words, matching letters, counting. 20 C.F.R. 416.926a(g)(2)(iii). The Court acknowledges that D.H. had not shown proficiency in all readiness skills, but that is nevertheless consistent with the ALJ's determination that D.H. had some impairment, but not *marked* impairment. Therefore, the ALJ's finding with regard to this domain is supported by substantial evidence.

### 2. Interacting and Relating with Others

In assessing a child's functioning in the domain of interacting and relating with others, the Commissioner considers the claimant's ability to "initiate and sustain emotional connections with others, develop and use the language of [his or her] community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others."

20 C.F.R. § 416.926a(i).  According to the regulation, preschoolers should be able to socialize with children and adults, and should begin to develop friendships with children of the same age. 20 C.F.R. 416.926a(i)(2)(iii).  Preschoolers should also be able to use words instead of actions to express themselves, relate to caregivers with increasing independence, choose their own friends, and play cooperatively with other children without continual adult supervision. (*Id.*) Finally, preschoolers should be able to initiate and participate in conversations, using increasingly complex vocabulary and grammar, and speaking clearly enough that both familiar and unfamiliar listeners can understand what they say most of the time.  (*Id.*)

Examples of limitation of functioning in this domain are the following: lack of close friends, avoidance or withdrawal, overanxiousness or fear of meeting new people or trying new experiences, difficulty playing games or sports with rules, difficulty communicating with others, and difficulty speaking intelligibly or with adequate fluency.  20 C.F.R. § 416.926a(i)(3).

Plaintiff argues that D.H. has a marked limitation in this domain based primarily on Ms. Olmstead's questionnaire.  (Dkt. No. 13 at 20 [Pl.'s Mem. of Law].)  Specifically, Plaintiff points to statements that D.H. "had 'serious' problems on a 'daily' basis following classroom rules, that he had difficulty remembering and following those rules, and that he needed 'many reminders.'" (*Id.* [citing T. 211].)  Plaintiff also notes Ms. Olmstead's indication that D.H. had "obvious" problems on a "daily" basis asking permission appropriately, taking turns in a conversation, and using adequate vocabulary and grammar to express himself in everyday conversation.  (*Id.*)

However, as was the case in the domain of acquiring and using information, Ms. Olmstead contradicts herself, and the ALJ adequately analyzed her opinion.  First, the ALJ did

note the "slight to obvious" problems to which Plaintiff cites–as well as Ms. Olmstead's statement that D.H. needed frequent reminders of classroom rules–in the same paragraph in which he found "less than marked limitations." (T. 31.) While Ms. Olmstead indicated three "obvious" areas of difficulty and one "serious" problem in this domain, overall, she indicated that D.H. had either slight problems or no problems with a majority of this domain's areas. (T. 211.) Her overall assessment is consistent with the ALJ's finding of some "less than marked" limitations.

Other evidence provided by Ms. Olmstead and Dr. Noia constitutes substantial evidence in support of the ALJ's decision. First, both Dr. Noia and Ms. Olmstead remarked that D.H. communicated effectively, and that they could understand what he said, indicating that D.H.'s speech is understandable to both familiar and unfamiliar listeners. (T. 212, 239.) Ms. Olmstead gave D.H. "Excellent" marks in willingness to participate in group activities, and "Satisfactory" marks in all other areas of work and social habits. (T. 189.) Dr. Noia also noted that D.H.'s manner of relating, social skills, and overall presentation were moderately adequate. (T. 239.) Dr. Noia found that D.H. is capable of adequately maintaining moderately appropriate social behavior, asking questions and requesting assistance at "somewhat" below an age appropriate manner, and interacting moderately well with peers and adults. (T. 240.) These observations are consistent with the ALJ's finding of less than marked limitations.

Finally, D.H.'s own statements support the ALJ's findings with regard to this domain. D.H. testified that he had friends at school that he liked to see every day, and he gave the names of two of them. (T. 65.) This would support a finding that D.H. could choose his own friends, as expected by the regulations. 20 C.F.R. 416.926a(i)(2)(iii). He admitted to getting in trouble

once on the school bus, he did not otherwise get in trouble in school. (T. 67.) Although D.H. further admitted to having fought with his brothers (and the incident on the school bus involved one of his brothers), the regulations do not suggest that any child who does not get along with his older brothers also has a marked limitation in this domain. (T. 44, 47.) The Court finds that there is substantial evidence supporting the ALJ's determination with regard to the domain of interacting and relating to others.

Plaintiff points to her own statements at the hearing and statements by Ms. Zawatski, in support of her argument. (*Id.* at 24.) As discussed above in Parts IV.B.3. and IV.C. of this Decision and Order, the ALJ properly discounted Ms. Zawatski's opinion and found Plaintiff's testimony not credible.

### 3. Caring for Yourself

In assessing a child's functioning in the domain of "caring for yourself," the Commissioner considers how well the child "maintain[s] a healthy emotional and physical state," how well the child meets his or her physical and emotional wants and needs in appropriate ways, how the child deals with stress and changes in the child's environment, and whether the child takes care of his or her own health, possessions, and living area. 20 C.F.R. 416.926a(k). A preschooler should be able to take care of many physical needs without assistance, such as putting on shoes and getting a snack. 20 C.F.R. 416.926a(k)(2)(iii). The child should also want to try to do things that he or she cannot yet do fully, such as tying shoelaces, climbing on a chair to reach something up high, or taking a bath. *Id.* A preschooler should be beginning to understand how to control behaviors that are not safe, such as crossing the street without an adult. *Id.* The regulations also contemplate that a child without restrictions in this domain

should be able to use what independence and competence he or she has to meet physical needs, such as eating, dressing, toileting, and bathing, to an extent that is appropriate for the child's age. 20 C.F.R. 416.926a(k)(a).

By Plaintiff's own account, D.H. is able to keep himself clean, use the toilet independently, and brush his own teeth. (T. 50.) Plaintiff testified that D.H. climbs up on chairs and tables in his home, and that D.H. bathes on his own and won't allow her to help. (T. 49-50.) These statements are consistent with a child who is developing normally. 20 C.F.R. 416.926a(k)(2)(iii) ("[The] child should also want to try to do things that he or she cannot yet do fully . . . [such as] climbing on a chair to reach something up high, or take a bath . . . ."). When Dr. Noia examined D.H., he observed that the child's hygiene and grooming were good, and found that D.H. is able to dress, bathe, and groom himself at age-appropriate levels. (T. 239-240.) Taken together, these statements constitute substantial evidence in support of the ALJ's decision.

In opposition, Plaintiff again points to Ms. Zawatski's opinion and Plaintiff's own statements. (Dkt. No. 13 at 24 [Pl.'s Mem. of Law].) As discussed above in Parts IV.B.3. and IV.C. of this Decision and Order, however, the ALJ was entitled to give little weight to Ms. Zawatski's opinions and find Plaintiff's testimony not credible.

As Plaintiff notes, Dr. Noia did find that D.H. was aware of danger and could take precautions at "somewhat below" an age appropriate level. (T. 240.) However, in light of the other substantial evidence supporting the ALJ's finding, Plaintiff has not established that such a slight deviation from age-appropriate behavior would constitute a "marked" limitation. Again, the Court notes that, if the ALJ's determination is supported by substantial evidence, the finding

must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado*, 805 F. Supp. at 153.

Finally, Plaintiff argues that Ms. Olmstead's questionnaire indicates a marked limitation in this domain.  (Dkt. No. 13 at 24-25 [Pl.'s Mem. of Law].)  Ms. Olmstead noted that D.H. has "a serious problem" on a daily basis with both "Taking care of personal hygiene," and "Caring for physical needs (e.g., dressing, eating)."  (T. 213.) Ms. Olmstead's observations, however, appear to be based on her observations that "[D.H.] occasionally has the same clothes on with the same smell/stains on them. He will sometimes come to school with food on his face/fingers. I have him wash his hands/face quite frequently."  (T. 213.)

Regarding hygiene, the regulations anticipate that a child should be able to care for his or her personal needs at only an "age-appropriate" level.  20 C.F.R. 416.926a(k)(a).  It is unclear to what extent a five-year-old child should be expected to pick out his own (clean) clothes, and wash his face before leaving for school.  The Court need not take a position on what tasks are D.H.'s responsibility as opposed to that of his caretakers.  In cases such as this one–where Ms. Olmstead's observations are directly contradicted Dr. Noia's findings and Plaintiff's own testimony–the evidence is susceptible to more than one rational interpretation, and therefore Commissioner's conclusion must be upheld.  *See Rutherford*, 685 F.2d at 62.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is **<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's cross-motion for judgment on the pleadings (Dkt. No. 14)

is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **<u>AFFIRMED</u>**; and it

is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**.

Dated: January 27, 2016
         Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge